IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY EAKINS, | ) | CASE NO. 5:13 CV 2218 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | **MEMORANDUM OPINION AND** |
| SECURITY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

# Introduction

**A.   Nature of the case and proceedings**

Before me[1] is an action by Kimberly Eakins under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 14. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 5.

[6] ECF # 12.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

**B.   Background facts and decision of the Administrative Law Judge ("ALJ")**

Eakins, who was 47 years-old at the time of the hearing,[11] has a high school education and has previously worked as a home health aide and an assembly line worker.[12] She testified that she became unable to work due to injuries suffered in an automobile accident, which produced back and neck pain, as well as depression.[13]

The ALJ, whose decision became the final decision of the Commissioner, found that Eakins had the following severe impairments: degenerative joint and disc disease of the cervical and lumbar spine; and depressive disorder, not otherwise specified.[14]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Eakins's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity

---

[7] ECF # 20 (Eakins's brief); ECF # 25 (Commissioner's brief).

[8] ECF # 20-1 (Eakins's charts); ECF # 25-1 (Commissioner's charts).

[9] ECF # 19 (Eakins's fact sheet).

[10] ECF # 27.

[11] Transcript ("Tr.") at 22, 24.

[12] *Id.* at 22.

[13] *Id.* at 18.

[14] *Id.* at 14.

to perform sedentary work as defined in 20 CFR 404.1567(a) except the claimant must be able to sit or stand alternatively at will. She can never climb ladders, ropes or scaffolds, but can occasionally climb ramps or stairs. She can occasionally balance, stoop, crouch, kneel and crawl. She can occasionally reach overhead. She must avoid concentrated exposure to extreme cold, all use of moving machinery, and all exposure to unprotected heights. She is limited to occupations where there are only occasional changes in the work setting and she can have only occasionally contact with the public or corkers [sic].[15]

The ALJ decided that this RFC precluded Eakins from performing her past relevant work.[16]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Eakins could perform.[17] The ALJ, therefore, found Eakins not under a disability.[18]

## C. Issues on judicial review and decision

Eakins asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Eakins presents the following two issues for judicial review:

- Whether the ALJ erred in failing to recognize Ms. Eakins' disabling level of pain, in light of treating physicians' opinions, and medical evidence supporting disability, and in the mistaken evaluation of plaintiff's credibility.

---

[15] *Id.* at 17.

[16] *Id.* at 22.

[17] *Id.*

[18] *Id.* at 23.

- Whether the ALJ erred in holding that the plaintiff's only upper extremity limitation was a restriction to only occasional reaching overhead.[19]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and the matter remanded for further proceedings.

## Analysis

**A.     Standards of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[20]

---

[19] ECF # 20 at 1.

[20] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[21] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[22]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

2.      *Treating physician rule and good reasons requirement*

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[23]

---

[21] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06cv403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[22] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[23] 20 C.F.R. § 404.1527(d)(2).

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[24]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[25] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[26]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[27] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[28] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[29] In deciding if such supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[30]

---

[24] *Id.*

[25] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[26] *Id.*

[27] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[28] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[29] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

[30] *Id.* at 535.

In *Wilson v. Commissioner of Social Security*,[31] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[32] The court noted that the regulation expressly contains a "good reasons" requirement.[33] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[34]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[35] It drew a distinction between a regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[36] The former confers a substantial, procedural right on

---

[31] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[32] *Id.* at 544.

[33] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[34] *Id.* at 546.

[35] *Id.*

[36] *Id.*

the party invoking it that cannot be set aside for harmless error.[37] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[38]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[39] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[40] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[41] *Blakley v. Commissioner of Social Security*,[42] and *Hensley v. Astrue*.[43]

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[44] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent

---

[37] *Id.*

[38] *Id.*

[39] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[40] *Id.* at 375-76.

[41] *Rogers*, 486 F.3d at 242.

[42] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[43] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

[44] *Gayheart*, 710 F.3d at 376.

with other substantial evidence in the administrative record.[45] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[46] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[47]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[48] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[49] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[50] specifically the frequency of the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions

---

[45] *Id.*

[46] *Id.*

[47] *Rogers*, 486 F.3d at 242.

[48] *Gayheart*, 710 F.3d at 376.

[49] *Id.*

[50] *Id.*

and the treatment reports.[51] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[52]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[53]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[54] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[55] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating physician disagrees with the opinion of a non-treating physician[56] or that objective medical evidence does not support that opinion.[57]

---

[51] *Id.*

[52] *Id.*

[53] *Id.*

[54] *Rogers*, 486 F.3d 234 at 242.

[55] *Blakley*, 581 F.3d at 406-07.

[56] *Hensley*, 573 F.3d at 266-67.

[57] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[58] The Commissioner's *post hoc* arguments on judicial review are immaterial.[59]

Given the significant implications of a failure to properly articulate (*i.e.*, remand) mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

- the failure to mention and consider the opinion of a treating source,[60]

- the rejection or discounting of the weight of a treating source without assigning weight,[61]

---

[58] *Blakley*, 581 F.3d at 407.

[59] *Wooten v. Astrue*, No. 1:09-cv-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

[60] *Blakley*, 581 F.3d at 407-08.

[61] *Id.* at 408.

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[62]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[63]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[64] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[65]

The Sixth Circuit in *Blakley*[66] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[67] Specifically, *Blakley* concluded that "even if we were to agree that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[68]

---

[62] *Id.*

[63] *Id.* at 409.

[64] *Hensley*, 573 F.3d at 266-67.

[65] *Friend*, 375 F. App'x at 551-52.

[66] *Blakley*, 581 F.3d 399.

[67] *Id.* at 409-10.

[68] *Id.* at 410.

In *Cole v. Astrue*,[69] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.

**B.     Application of standards**

Eakins presents issues as to whether the ALJ properly handled the functional limitation opinions of Eakins's treating physicians, and correctly evaluated her credibility as to pain, in formulating the RFC. Because I will find that the ALJ here did not properly address the opinions of her treating physicians, especially in light of the greater weight given to a state agency reviewing physician, I will not address the credibility issue, which should be reconsidered on remand.

The ALJ adopted a restrictive RFC, which calls for only sedentary work, accompanied by a sit/stand option and postural, environmental, and mental limitations that restrict Eakins to only occasional changes in the work setting and occasional contact with the public and co-workers. Eakins, however, contends that even this RFC is not supported by substantial evidence because the degenerative disc disease in her cervical and lumbar spine makes it impossible for her to sustain employment over a regular eight-hour workday.

---

[69] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

By way of background, the record shows, and the ALJ acknowledges, that Eakins did sustain injuries to her neck and back in a 2008 auto accident.[70]

The objective medical evidence is that a cervical MRI in December 2008 disclosed multiple instances of herniation, mild to moderate spondylosis and compression, and early disc degeneration.[71] A cervical x-ray[72] as well as cervical and lumbar MRIs[73] were performed in 2009. They showed degenerative changes as well as mild stenosis.[74] 2010 x-rays of the lumbar and cervical spine showed a normal lumbar spine with degenerative disc disease at C5-6 and C6-7.[75] A thoracic MRI, done on September 29, 2010, showed mild noncompressive disc bulging at T11-12.[76]

The record also shows that Eakins began receiving treatment for pain in 2009, beginning with a TENS unit and doses of Percocet, Elavil, Zanaflex and Naprosyn.[77] By early 2010, she was taking only Percocet, and then shortly thereafter began receiving steroid

---

[70] *See*, Tr. at 18.

[71] *Id.* at 251.

[72] *Id.* at 245.

[73] *Id.*

[74] *Id.*

[75] *Id.* at 378, 380.

[76] *Id.* at 382.

[77] *Id.* at 18.

injections, which left her pain-free for about two weeks after the injections.[78] But by August 2010 she was using Zanaflex again, as she reported weakness in her left shoulder, arm, and hand, and by September 2010 she was again taking Percocet every 10-12 hours.[79]

At this point, Eakins saw a neurosurgeon because she was experiencing loss of bladder and bowel control.[80] As the ALJ observed, this issue "appears to have resolved, as [Eakins] did not express it as a concern in her next visit in October 2010."[81] Moreover, the ALJ also noted that at the time of the hearing, Eakins testified that she was continuing to use her TENS unit and her prescription pain medications "with minimal side effects."[82]

As to the opinion evidence, Eakins has had extensive treatment relationships with three physicians, who all offered opinions as to her functional limitations.

Prasanna Soni, M.D., an orthopedic surgeon, treated Eakins from September, 2008, through April, 2009, and offered a functional capacity opinion in January, 2010.[83] In that opinion, Dr. Soni noted that Eakins was depressed and frustrated because of her pain, and opined that if Eakins did not have surgery, she would require pain management for the rest

---

[78] *Id.* at 18.

[79] *Id.* at 19.

[80] *Id.*

[81] *Id.*

[82] *Id.*

[83] ECF # 20-1, at 3-4 (citing transcript).

of her life.[84] Dr. Soni concluded that Eakins was not able to go back to work in any capacity.[85]

Dane Donich, M.D., a neurosurgeon, treated Eakins from September, 2010, through March, 2011, and gave a first opinion in June, 2011.[86] In that opinion, Dr. Donich found that Eakins had diminished strength in both hands, difficulty with fine motor coordination, and generalized weakness throughout her extremities.[87] He concluded that surgical intervention would not be helpful, that Eakins was unlikely to improve, and that it is unlikely that Eakins would be able to regain any sort of gainful employment in the foreseeable future.[88] On August 25, 2011, Dr. Donich reviewed the previous functional capacity opinion and concluded that it revealed a significant functional disability compatible with complete and total disability.[89]

William Midian, M.D. treated Eakins for pain management from September, 2009, to January, 2012. His examination of December 20, 2011, had disclosed that Eakins had multiple tender points, which raised the issue of possible myalgia/myositis points.[90] On

---

[84] Tr. at 261-62.

[85] *Id.*

[86] *Id.* at 376.

[87] *Id.*

[88] *Id.*

[89] *Id.* at 414.

[90] *Id.* at 552.

January 25, 2012, Dr. Midian stated that there is a possibility that Eakins has fibromyalgia and so considered sending her to a rheumatologist.[91]

Contrary to Eakins's assertion,[92] the ALJ here addressed the treatment records of all three treating physicians.[93] But the ALJ specifically addressed the only the opinions of Dr. Soni and Dr. Donich. The ALJ gave Dr. Soni's opinion "little probative weight" because it contained a comment about Eakins being disabled, which, the ALJ stated, is a finding reserved for the Commissioner, and because the opinion is "not consistent with the medical evidence of record" or Dr. Soni's own treatment note that Eakins should try to do exercises at home, which, the ALJ stated, "implies[that] even he believes she is capable of a greater activity level than she was engaged in."[94]

As to the opinion of Dr. Donich, the ALJ, in a very brief comment, gave it "little probative weight" because "it appears heavily reliant on the discredited functional capacity report of [Jessica] Duke [an occupational therapist whose report was examined and given "little probative weight"]."[95]

---

[91] *Id.* at 555.

[92] ECF # 20 at 15 (citing Tr. at 18-19).

[93] *See*, Tr. at 18 (treatment with Dr. Midian), 20 (treatment with Dr. Soni), and 21-22 (treatment with Dr. Donich).

[94] Tr. at 20.

[95] *Id.* at 21-22 (referencing Tr. at 21).

By contrast, the ALJ gave "great weight" to the January, 31, 2011, report of James Cole, M.D., a state agency reviewing consultant.[96] The ALJ specifically cited that the reasons for the weight assigned were that: (1) Dr. Cole's opinion is consistent with the record as a whole, (2) Dr. Cole is an expert in Social Security law, and (3) "he had the benefit of reviewing Ms. Eakins' longitudinal record."[97]

As to the opinion of Dr. Soni, the ALJ did not give good reasons for discounting that opinion. While it is true that only the Commissioner may make the decision of ultimate disability, the ALJ's citation to that fact was an all too familiar, and all too glib, reason for discounting the substance of Dr. Soni's opinion. The fact that a treating medical source may go a step too far within a proper, well-supported opinion as to functional limitations and also provide an improper comment as to ultimate disability should not be a reason for throwing out the bulk of the opinion. Indeed, the Commissioner is quite accustomed to arguing that occasional slips by an ALJ in strictly complying with the procedural rubrics should not invalidate a whole opinion, which, it is vigorously maintained, should be read holistically. And, in large measure, reviewing courts have agreed with this view. I invite the Commissioner to consider that the same argument works for the opinions of treating sources, who, unlike the ALJs, are not presumed to be thoroughly versed in the procedural rules of what may be said and how results are to be expressed.

---

[96] *Id.* at 21.

[97] *Id.*

In addition, as to Dr. Soni, the single articulated reason for finding the opinion "inconsistent" with the doctor's own notes is simply not a good reason. The fact that Dr. Soni recommended that Eakins should try to exercise more at home for whatever relief that may afford is not substantial evidence that Dr. Soni's other findings – that Eakins has herniated cervical and lumbar discs and would likely need surgery or face a lifetime of pain management – were somehow deserving of less weight.

More importantly, the decision to give great weight to the 2011 opinion of a reviewing source on the specific ground that this represents the best, longitudinal view of Eakins's condition, is significantly undermined by the fact that Dr. Midian, a treating source, provided three distinct medical treatment notes from examinations after the reviewer's January, 2011, opinion that disclosed: (1) cervical and lumbar facet joint dysfunction, decreased reflexes and multiple tender points;[98] (2) again, multiple tender points, with a notation that Eakins may have an issue of possible myalgia/myositis points;[99] and (3) an opinion that Eakins possibly has fibromyalgia, and should possibly see a rheumatologist.[100]

While it's true that these notes by Dr. Midian are not labeled as an "opinion," there is little doubt that functionally they are exactly that. In addition, as noted, these notes were not seen by the reviewer, and so remove the basis for giving the reviewing source great weight because it was the best longitudinal view of Eakins's condition. Plainly, it was a

---

[98] Tr. at 477 (examination of March, 2011).

[99] *Id.* at 552.

[100] *Id.*

-19-

truncated, incomplete view that was not supported by the substantial evidence of having seen and addressed the findings of Dr. Midian.

Accordingly, for the reasons stated, I find that there is no substantial evidence for either the weight given to Dr. Soni's opinion or to the weight given to the opinion of the state reviewer. Thus, the matter must be remanded for further proceedings consistent with this opinion. On remand, the issue of how Eakins's credibility was addressed should be reconsidered, and that done consistent with an appropriate treatment of the medical and opinion evidence from her treating sources that may provide support for Eakins's credibility as to her symptoms.

## Conclusion

For the reasons stated, substantial evidence does not support the finding of the Commissioner that Eakins had no disability. The denial of Eakins's application is reversed and the matter remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: September 30, 2014          s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge